FILED

DEC 28 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORUM,

    Plaintiff,

v.

CHERTOFF,

    Defendant.

No. C05-00795 MJJ

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Before the Court is Defendant Michael Chertoff's ("Defendant") Motion for Summary Judgment. (Docket No. 37.) Plaintiff Percy Orum ("Plaintiff") opposes the Motion. For the following reasons, the Court **GRANTS** the Motion for Summary Judgment.

## FACTUAL BACKGROUND

The following factual allegations are uncontested unless noted.

Plaintiff began working for the Immigration and Naturalization Service, now the Department of Homeland Security ("DHS"), in March 1980 as a Detention Enforcement Officer. (Plf.'s Dep. at 13:4.) Plaintiff applied, and was denied, a Special Agent position in 1982. (Id. at 13:5-12.) Plaintiff filed an Equal Employment Opportunity ("EEO") Complaint for DHS' failure to hire him into this position. (Id.) Plaintiff was, however, eventually hired as a Special Agent in 1987. (Id. at 15:2-17:19.) In 1998, Plaintiff was scheduled to attend a refresher training course for Special Agents at the Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico. (Id. at 34:11-

23, 37:18-21.) Plaintiff flew to El Paso, Texas and rented a car to drive to Artesia. (*Id.* at 52:17-24.) When Plaintiff arrived in El Paso, he discovered that the airline lost his luggage, which he needed for the training. (*Id.* at 48:18-25, 49:1-7, 50:19-25.) While waiting for his luggage, Plaintiff checked into a hotel in El Paso and called the FLETC in Artesia to explain his situation. (*Id.* at 60:11-21.) He spoke to Tracey Hamilton ("Hamilton") and Karen Brito ("Brito"), both Training Technicians at FLETC. (*Id.* at 60:23-61:12; Plf.'s Opp. Exh. B, Brito Aff. ("Brito Aff") at 1; Plf.'s Opp. Exh. C, Hamilton Aff. ("Hamilton Aff.") at 1.) Plaintiff also spoke to Philip Tutak ("Tutak"), a Supervisory Special Agent at FLETC. (Plf.'s Dep. at 75:2-5; Complaint ¶ 6.) Tutak gave Plaintiff explicit instructions that Plaintiff should leave El Paso early enough the next morning to arrive in Artesia on time for the training. (Plf.'s Dep. at 72:5-75:1; Plf.'s Opp. Exh. E, Tutak Aff. ("Tutak Aff") ¶ 1.) On the phone, Plaintiff did not tell Tutak his race, nor did Tutak say anything which suggested that he knew Plaintiff's race. (Plf.'s Dep. at 75:10-25). Tutak claims that he did not know Plaintiff's race, age or prior EEO record until he met him the next morning in Artesia. (Tutak Aff. ¶ 4.) Plaintiff offers evidence, however, that after Tutak finished his phone conversation with Plaintiff, Brito overheard Tutak make a reference to Plaintiff being black. (Brito Aff. ¶ 3.)

Tutak later advised Bertha Alvillar-Lease ("Alvillar-Lease"), the Assistant Chief Deputy for Enforcement at FLETC in Artesia, that he had given Plaintiff explicit instructions to arrive by the start of the course at 7:30 a.m. (Plf.'s Opp. Exh. F, Alvillar Aff. ("Alvillar Aff.") ¶ 1.) Alvillar-Lease told Tutak that if Plaintiff did not arrive on time she wanted to see him immediately. (*Id.*)

Plaintiff received his luggage that evening from the airline and stayed overnight in El Paso. (Plf.'s Dep. at 63:21-64:5.) He left early the next morning, but was tired and stopped to take a nap along the way. (Plf.'s Dep. 88:3-10; Tutak Aff. ¶ 2.) Plaintiff arrived at the FLETC at 10:30 a.m. and Alvillar-Lease requested that he report to her office. (Alvillar Aff. ¶ 2; Plf.'s Dep. at 87:4-15.) Alvillar-Lease had, at that point, already decided that unless Plaintiff had a very good reason for his tardiness, she was going to send him home. (Alvillar Aff. ¶ 2.)

Upon meeting Plaintiff and hearing Plaintiff's explanation for his late arrival, Alvillar-Lease told Plaintiff that he had to leave the training. (Alvillar Aff. ¶ 2-4; Plf.'s Dep. at 87:16-88:2.) It was Alvillar-Lease's belief that Tutak's "explicit instructions" were a direct order by a supervisor with

2

the authority to issue such an order and Plaintiff had disobeyed that order without a valid excuse. (Alvillar Aff. ¶ 1.) In addition, Plaintiff made comments to Alvillar-Lease during their conversation which led her to believe that Plaintiff was generally too tired to pay attention to the class material and would be better off returning to the course at another time. (*Id.*) Alvillar-Lease did not say anything to Plaintiff that suggested she had a bias against him because of his race. (Plf.'s Dep. at 100:17-20.) Instead, Alvillar-Lease claims that her first knowledge of Plaintiff's race was when he walked into her office, after she had made up her mind to send him home. (Alvillar Aff. ¶ 2.)

Plaintiff was instructed to leave that day and was not allowed to stay at the FLETC overnight. (Orum Decl. ¶ 3; Hamilton Aff. ¶¶ 5-6.) Plaintiff drove back to El Paso that evening and was booked on an evening flight to Oakland. (Hamilton Aff. ¶ 7.) The emotional and physical toll that this incident took on Plaintiff led him to apply, and receive approval for, Worker's Compensation. (Plf.'s Dep. at 113:3-114:25.) Plaintiff was also required to write a memo to his District Director explaining why he was sent home from FLETC. (*Id.* at 119:20-120:6.) Plaintiff further claims that subsequent discrimination, in conjunction with the incident at FLETC, caused him humiliation, loss of self-esteem, an inability to work for almost a year, and other work-related hardships. (Plf.'s Opp. at 6; Plf.'s Decl. at 1.)[1]

## PROCEDURAL BACKGROUND

On October 5, 1998, Plaintiff filed a formal administrative complaint (Agency Compl. No. I-99-W007 ("EEOC Complaint I ") with the Equal Employment Opportunity Commission ("EEOC"). In that complaint, Plaintiff alleged that the DHS discriminated against him on the basis of his race, age, color, sex, and in retaliation for making prior claims. Plaintiff's allegations were based on the incident described above at the FLETC. The EEOC did not find that the DHS discriminated against Plaintiff, and issued a final decision on May 3, 2002 ("EEOC Decision I"). On July 19, 2004, Plaintiff filed a Complaint in this Court seeking a review of that EEOC decision. (*Orum v. Ridge*, Case No. C-04-2923-MJJ ("*Orum I*")).

On June 19, 2001, Plaintiff filed a new complaint of employment-related discrimination with

---

[1] Plaintiff's claims of discrimination after the FLETC incident, as discussed below, appear to rely on allegations that are not properly before the Court at this time.

3

1    the EEOC, alleging that he was subjected to discrimination based on race, age, color, sex, retaliation
2    for prior EEOC activity, and a continuous pattern of harassment and hostile work environment
3    (Agency Compl. No. I-01-W092 ("EEOC Complaint II"). The EEOC dismissed Plaintiff's EEOC
4    Complaint II for failure to file the formal complaint in a timely manner ("EEOC Decision II").
5    Plaintiff appealed the agency decision through the EEOC's administrative appeal process, and on
6    November 22, 2004, the EEOC denied Plaintiff's request for reconsideration. (*See* Docket No. 28 at
7    2.)
8    On February 23, 2005, Plaintiff filed a second Complaint in this Court ("*Orum II*"), which
9    included the allegations Plaintiff made in *Orum I* and asserted the additional allegations he made in
10   the EEOC Complaint II. (Docket No. 1.) On June 8, 2005, this Court consolidated *Orum I* and
11   *Orum II*. (Docket No. 11.) The Court construed Plaintiff's Complaint in *Orum II* as an amended
12   complaint to his complaint in *Orum I*. (Docket No. 28.) On April 6, 2006, the Court granted in part
13   and denied in part Defendant's Motion to Dismiss. (*Id.* at 8.) Specifically, the Court dismissed
14   Plaintiff's claims insofar as they relied on the allegations in paragraphs 52 through 177 of the *Orum
15   II* Complaint. (*See id.*) Therefore, Plaintiff's claims at issue in this case are those based on
16   paragraphs 1 through 51 of the *Orum II* Complaint which concern Plaintiff's above-described
17   experience at the FLETC in May 1998. Plaintiff asserts the following five claims: (1) race
18   discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1)(2), (2) national origin
19   discrimination in violation of Title VII on the grounds of his race, (3) age discrimination in violation
20   of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a, (4) retaliation in violation
21   of Title VII, and (5) a violation of 42 U.S.C. § 1983. (*See* Complaint at 26-27.) Defendant now
22   seeks summary judgment on all of Plaintiff's claims.

## LEGAL STANDARD

24   Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is
25   no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of
26   law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the
27   initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings,
28   depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence

4

of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## ANALYSIS

### I. Plaintiff's Claims under Title VII, ADEA and 42 U.S.C. § 1983

Plaintiff claims that Defendant discriminated against him in violation of Title VII, ADEA and 42 U.S.C. § 1983. The thrust of Plaintiff's arguments, and thus Defendant's Motion to Dismiss, is that Defendant discriminated against Plaintiff, because of his race, by sending him home from FLETC. The Court therefore engages first with this claim, covering Plaintiff's first, second and fourth causes of action, then turns to Plaintiff's other claims.

#### a. Title VII Framework

Title VII makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case under Title VII, the plaintiff must offer evidence that "gives rise to an inference of unlawful discrimination, either through the framework set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence of discriminatory intent." *Vasquez v. County of Los Angeles*, 349 F.3d 634,

5

640 (9th Cir. 2004) (citations and quotations omitted). "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Under the *McDonnell Douglas* framework, to establish a prima facie case of discrimination the plaintiff bears the initial burden of showing: (1) that the plaintiff belongs to a class of persons protected by Title VII, (2) that the plaintiff performed his or her job satisfactorily, (3) that the plaintiff suffered an adverse employment action, and (4) that the plaintiff's employer treated the plaintiff differently than a similarly-situated employee who does not belong to the same protected class as the plaintiff. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Similarly, to establish a prima facie case of retaliation, a plaintiff must offer proof: (1) that the plaintiff was involved in a protected activity opposing an unlawful employment practice, (2) that the plaintiff suffered an adverse employment action, and (3) that there was a causal link between the protected activity and the adverse action. *See Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006). "When a plaintiff does not rely exclusively on the presumption but seeks to establish a prima facie case through the submission of actual evidence, very little such evidence is necessary to raise a genuine issue of fact regarding an employer's motive[.]" *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir.1985). This principle, however, "do[es] not prevent the summary disposition of meritless suits but simply ensure[s] that when a genuine issue of material fact exists a civil rights litigant will not be denied a trial on the merits." *Lowe*, 775 F.2d 998 *as amended* 784 F.2d 1407 (9th Cir. 1986).

If the plaintiff is able to make out a *prima facie* case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802. As the Supreme Court explained, "the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the *prima facie* case - *i.e.*, the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (quoting *Burdine*, 450 U.S. at 254). This burden is one of production, not persuasion; it "can involve no credibility assessment." *Id.* Thus, to rebut the presumption of discrimination arising from the *prima facie* showing, "[t]he defendant need not persuade the court that it was actually

6

motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. In effect, if the defendant meets its burden at this stage, "[t]he presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *Id.* at 255.

The burden then shifts back to the plaintiff to prove that the defendant's stated reasons are merely pretextual. *St. Mary's*, 509 U.S. at 508. At this final stage, the factual inquiry proceeds to a new level of specificity to prove pretext. *Burdine*, 450 U.S. at 255. The Court's inquiry turns from the generalized factors that establish a *prima facie* case, to the specific proofs and rebuttals of discriminatory motivation. *St. Mary's*, 509 U.S. at 516. Accordingly, the plaintiff must do more than show that the employer's reason is false. The plaintiff must adduce sufficient evidence to raise a triable issue of fact that the presumptively valid reasons for the plaintiff's rejection or termination were in fact a coverup for a discriminatory decision. *McDonnell Douglas*, 411 U.S. at 805. As the Supreme Court explained, "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the reason." *St. Mary's*, 509 U.S. at 515 (emphasis in original). Throughout this process, the plaintiff at all times bears the ultimate burden of persuasion. *Id.* at 511. Thus, in the final stage of the analysis, the plaintiff's burden of production "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

### b. There Are No Triable Issues of Material Fact Supporting Plaintiff's Title VII Race Discrimination and Retaliation Claims.

With this framework in mind, the Court turns to the instant case. Defendant argues that Plaintiff cannot establish a prima facie case of discrimination or retaliation under Title VII. Specifically, Defendant contends that Plaintiff has not suffered an adverse employment action. In addition, Defendant contends that Plaintiff cannot show, in regards to his retaliation claim, a causal link between his protected conduct and the decision to send him home from FLETC. Defendant further contends that even if Plaintiff can establish a prima facie case, Plaintiff cannot show that Defendant's legitimate justification for sending Plaintiff home from FLETC was a pretext for race discrimination or retaliation.

The Court turns first to Plaintiff's prima facie case of race discrimination. Plaintiff contends

that he was sent home from the FLETC because of his race. Plaintiff argues that Tutak was biased against him because of his race, that Tutak relayed that bias to Alvillar-Lease, and then Alvillar-Lease made the final determination to send him home. (*See, e.g.*, Plf.'s Dep. at 88:11-13.) Plaintiff maintains that Tutak knew he was black and treated him differently than other employees because of his race. (*See* Plf.'s Dep. at 75:6-9, 88:11-19, 100:17-24.)

In this context, "[d]irect evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005). Here, Plaintiff's only evidence is testimony from Training Technicians Brito and Hamilton. Brito testified that she overheard Tutak say, after speaking with Plaintiff on the phone, that Plaintiff was black. (Brito Aff. ¶ 3.) Hamilton testified that Brito told her what Tutak said and that she inferred that to mean that Tutak thought that "blacks have attitude." (Hamilton Aff. ¶ 2.) Plaintiff, however, also submits evidence that Tutak did not know Plaintiff's race until Plaintiff arrived in Artesia the following day. (Tutak Aff. ¶ 4.) Defendant contends that Brito and Hamilton's statements are inadmissible and should not be considered by the Court. However, even if the statements were admissible and the Court drew all reasonable inferences in favor of the non-moving party, Plaintiff fails to show the requisite nexus between Tutak's remark and the decision maker in this case, Alvillar-Lease.

If remarks are offered as evidence of discriminatory intent, they must either be those made by the decision-maker herself or Plaintiff must show a sufficient nexus between the remarks and the decision-makers' subsequent employment decisions. *See Vasquez*, 349 F.3d at 640. There is not a sufficient nexus unless the employee in question is substantially involved in the employment action. *See DeHorney v. Bank of America Nat. Trust and Sav. Ass'n*, 879 F.2d 459, 468 (9th Cir. 1989) (holding that an investigator who reported the conduct of an employee to a supervisor who eventually fired the employee for that conduct is not substantially involved in the employment action without additional evidence of his involvement).

Here, it is uncontested that Tutak and Alvillar-Lease spoke regarding Plaintiff's situation between the time that Plaintiff spoke by phone with Tutak and the point at which Plaintiff arrived in Artesia. (Tutak Aff. ¶ 2.) There is no evidence, however, that Tutak was substantially involved in

the decision to send Plaintiff home early, or that he even relayed Plaintiff's race to Alvillar-Lease. To the contrary, Defendant offers uncontroverted evidence that Alvillar-Lease did not know Plaintiff's race until he walked into her office, after she had spoken to Tutak and decided to send Plaintiff home. (Alvillar Aff. ¶ 2; Plf.'s Dep. at 88:11-13.) The record therefore, lacks evidence that Tutak was a decision-maker in this case or that he relayed his alleged knowledge of Plaintiff's race, or any bias related to Plaintiff's race, to Alvillar-Lease.

While the Court is mindful that Plaintiff need only submit minimal evidence to support an inference of discriminatory intent, the record here lacks the minimal evidence required. *See, e.g., Lowe*, 775 F.2d at 1009 (noting that sufficient evidence of a discriminatory motive may include evidence such as "the [defendant's] reaction, if any, to [plaintiff's] legitimate civil rights activities; and treatment of [plaintiff] during his prior term of employment; [defendant's] general policy and practice with respect to minority employment"). There are, therefore, no triable issues of material fact that could establish the requisite nexus between Tutak's remark and Alvillar-Lease's decision to send Plaintiff home early.

In lieu of evidence of discriminatory intent, a prima facie case of race discrimination can be established by satisfying the four-prong *McDonnell Douglas* test. Here, Plaintiff cannot satisfy the test because Defendant's act of sending Plaintiff home was not an adverse employment action. An adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Here, Plaintiff did not suffer a change in employment status, he was not reassigned, nor was there a significant change in his benefits. Instead, he was sent back to work without suffering any economic loss. (Plf.'s Dep. at 113:7-23,114:21-25, Alvillar Aff. ¶ 2.) His supervisor asked him to write a memo detailing the incident, but this did not create a hardship for him. (Plf.'s Dep. at 120:1-21.) He applied for, and received, Worker's Compensation, after his return because of the physical and emotional strain from being sent home from FLETC. This, however, does not constitute an adverse employment action. *See Burlington*, 524 U.S. at 761 ("A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or

9

other person acting with the authority of the company, can cause this sort of injury.") Plaintiff, therefore, has not shown that he could make out a prima facie case of race discrimination on this record.

Next, the Court looks at Plaintiff's retaliation claim under Title VII. While Plaintiff contends that Alvillar-Lease's decision to send him home from FLETC was retaliation for his prior filing of EEO complaints, Plaintiff fails to create a triable issue of material fact on this claim. An adverse employment action in the retaliation context is one that a reasonable employee would have found materially adverse, meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern v. White*, --- U.S. ---, 126 S.Ct. 2405, 2415 (2006) (quotation and citation omitted). Here, the act of sending Plaintiff home early from the FLETC without economic hardship or a change in job responsibilities is not one that would dissuade a reasonable worker from bringing a charge of discrimination. Therefore, as with the race discrimination claim, there is no adverse employment action at issue here that would allow the Court to find that Plaintiff could establish a prima facie case of retaliation.

In addition, Plaintiff does not offer evidence that there was a causal link between Plaintiff's protected activity, the filing of an EEO complaint in 1982, and the adverse action at issue here, which occurred in 1998. *See Freitag*, 468 F.3d at 541-42 (noting that an employer's awareness of an employee's prior protected activity is critical in determining if there is a causal link between the protected activity and the adverse action). Plaintiff does not provide any evidence that Tutak or Alvillar-Lease knew of Plaintiff's prior EEO activity or that this knowledge had anything to do with Alvillar-Lease's decision to send Plaintiff home from FLETC.

In sum, Plaintiff cannot establish a prima facie case of discrimination or retaliation under Title VII and there are no triable issues of material fact on these claims. Even if, however, Plaintiff had met his burden of establishing a prima facie case, Defendant provides a non-discriminatory reason for Defendant's actions and Plaintiff cannot, on this record, prove that this reason is pretextual.

Defendant maintains that Plaintiff arrived at the FLETC training late and in violation of a direct order from his superior. Alvillar-Lease testified that Plaintiff's late arrival and violation of a

10

direct order gave her cause to dismiss him from the training. (Alvillar Aff. ¶¶ 2, 3, 6.) Alvillar-Lease testified that the FLETC policy on late arrival is on case-by-case basis. (*Id.* ¶ 7.) If a student is late due to circumstances beyond their control the student is generally allowed to stay. (*Id.*) If, however, a student misses too much time, displays a reluctant attitude about the training or the student's behavior is not in conformance with agency standards, the student may also be sent home. (*Id.*) No disciplinary action is taken by the FLETC for late arrival. Instead, as occurred here, the student is dismissed from the training and sent home, which is not a disciplinary action. Defendant, therefore, has met its burden of providing a non-discriminatory reason for Defendant's actions.

The burden then shifts to Plaintiff to prove that Defendant's non-discriminatory reasons are pretext. "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez*, 349 F.3d at 641. Here, Plaintiff has not shown either. Plaintiff's only evidence of discrimination, as discussed above, is not sufficient to make out a prima facie case, much less prove pretext. Plaintiff does not show that Defendant's asserted non-discriminatory reason for the employment decision was false, or that Tutak's knowledge of Plaintiff's race more likely motivated the decision to send Plaintiff home than Defendant's non-discriminatory reason. Furthermore, Plaintiff does not provide any evidence that Defendant's non-discriminatory explanation is unworthy of credence, nor does the Court find any in the record. Plaintiff, therefore, has failed to show that Defendant's non-discriminatory reason for sending Plaintiff home was pretextual.

There are, therefore, no triable issues of material fact on this record because Plaintiff cannot make out a prima facie case of discrimination or retaliation, nor can Plaintiff prove that Defendant's non-discriminatory reasons for the employment action were pretextual.

   c.   **There Are No Triable Issues of Material Fact Supporting Plaintiff's Other Claims.**

Plaintiff additionally claims that Defendant discriminated against him on the basis of his national origin under Title VII, discriminated against him on the basis of his age under ADEA and asserts a claim under 42 U.S.C. § 1983. The Court addresses each argument in turn.

Plaintiff's claim that Defendant discriminated against him on the basis of his national origin

11

in violation of Title VII is unsupported by the record. Plaintiff does not provide even a minimum amount of evidence such as, inter alia, his country of origin. In addition, Plaintiff's Opposition brief and supporting documents make frequent reference to Plaintiff's belief that the discrimination he suffered was because of his *race*. (*See, e.g.*, Plf.'s Opp. at 3:14-15.) Plaintiff, therefore, has not met his burden of offering evidence to support a claim under Title VII for national origin discrimination. The Court finds no triable issues of material fact on this claim.

Next, Plaintiff claims that Defendant discriminated against him because of his age, pursuant to the Age Discrimination in Employment Act ("ADEA"). ADEA makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual [who is at least 40 years old] . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The burden-shifting framework articulated in *McDonnell Douglas*, set forth in detail above, governs the analysis of Plaintiff's claims under ADEA as well as Title VII. *See Pottenger v. Potlatch Corporation*, 329 F.3d 740, 745 (9th Cir. 2003) ("In evaluating age discrimination claims, we employ the familiar framework developed in *McDonnell Douglas*"). "To establish a prima facie case of age discrimination through circumstantial evidence, the plaintiff must show that he was: (1) a member of a protected class [age 40-70]; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996) (citation omitted). While Plaintiff cites the ADEA in his complaint, he provides no allegations, much less evidence, supporting an age discrimination claim. The Court therefore finds no triable issues of material fact regarding Plaintiff's claim of age discrimination under ADEA.

Finally, Plaintiff asserts a claim under 42 U.S.C. § 1983. While unclear from the Complaint, Plaintiff appears to base this § 1983 claim on retaliation under Title VII or on a violation of the First Amendment. Insofar as Plaintiff's claim is based on Title VII, his failure to support his Title VII retaliation claim, as discussed above, is fatal to his claim under § 1983. *See Lawson v. Washington*, 296 F.3d 799, 806 (9th Cir. 2002) (holding that failure to establish a prima facie case under Title VII supports a finding that there are not sufficient facts to support a § 1983 claim on the same facts). Insofar as Plaintiff's claim is based on a violation of the First Amendment, Plaintiff has not alleged

12

any facts, much less offered evidence, to support this claim. The Court therefore finds no triable issues of material fact regarding Plaintiff's claim under § 1983.

## CONCLUSION

For the foregoing reasons, the Court finds that there are no triable issues of material fact and Plaintiff cannot, as a matter of law, make out his claims under Title VII, ADEA or § 1983. The Court therefore **GRANTS** Defendant's Motion for Summary Judgment. The Clerk of the Court is directed to close the file.

**IT IS SO ORDERED.**

Dated: December 3\5, 2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE